CITY OF LITTLE ROCK *v.*
ARKANSAS LOUISIANA GAS COMPANY

76-342                                    548 S.W. 2d 133

Opinion delivered March 28, 1977
(Division I)

348

*Joseph C. Kemp*, City Atty., and *Benita Terry*, Asst. City Atty., for appellant.

*Charles W. Baker*, of *Baker & Probst, P.A.*, for appellee.

FRANK HOLT, Justice. This appeal presents the issue whether the appellant city or the appellee Arkla must pay for the cost of moving appellee's main pipeline which was necessitated by a street improvement project initiated by the appellant. The chancellor held that the city should pay Arkla $15,000 for the costs it incurred by the relocation. Appellant first contends the chancellor erred in finding that the city annexed the "road subject to Arkla's pre-existing right-of-

way easement." Therefore, appellant argues, Arkla is not entitled to any damages. We cannot agree.

As shown by the stipulation, the appellee had a right-of-way easement in the road before its 1961 annexation by the city. Arkla had a main pipe line under the pavement of the county road. Arkla had a right, pursuant to a franchise from the city, "to locate its facilities in the City's street rights-of-way." The city derived an annual franchise tax from Arkla ($472,028 in 1974, $400,439 in 1975). Clearly, subsequent to the annexation, the easement right was continued by virtue of the city wide franchise granted to Arkla and the taxes collected by the city for that privilege. "There is no question but what a public utility owns a property right in its franchise for which it is entitled to compensation in eminent domain proceedings in the same manner as when other property rights are taken." *Ark. State Highway Comm. v. Ark. Power & Light Co.*, 231 Ark. 307, 330 S.W. 2d 77 (1950). Here, appellee has a compensable property right.

Neither can we agree that the chancellor erred in finding that appellee was ousted from its easement. To secure funds for the needed improvements, the city applied to the Federal Highway Administration and an agreement was reached by which the city would pay 30% and the federal agency 70% of the costs. It was stipulated that Arkla was permitted to place a new main line underneath the pavement of the street with "stub connections" from the new main line to either or both sides of the right-of-way to serve customers without the necessity for cutting the pavement. However, Arkla relocated its line from underneath to the outside of the pavement and within the right-of-way easement. Arkla justifies its relocation and claim for costs on the basis of the stipulation that "Among other requirements, CITY was required by the Federal Highway Administration to guarantee that all routine maintenance on manholes be confined to the hours of 8:00 p.m. to 6:00 a.m. and that no permits for cutting the pavement for the installation of service connections be allowed for a period of five years after the completion of the project. ARKLA placed its new line outside of the pavement because its regular and routine business requires that it be able to tap its line to make new services and to maintain and protect the

safety of its gas mains. . . . . The area of this street improvement is a rapidly developing part of CITY and ARKLA is legally bound to provide service to residents of CITY which would necessarily involve adding service lines off of the gas main that is in Geyer Springs Road. CITY has no prohibition against cutting the pavement of its streets in order to maintain ARKLA's system or to add new customers, other than prohibitions arising out of agreements with the Federal Highway Administration such as set out above."

When a public utility is ousted from its occupancy of that portion of the street or easement in which the utility has acquired a property right, it cannot be forced to move or relocate without just compensation for its costs. *Ark. State. Highway Comm.* v. *Ark. Power & Light Co., supra;* and *Ark. State Highway Comm.* v. *Ark. Power & Light Co.,* 235 Ark. 277, 359 S.W. 2d 441 (1962). Here, as indicated by the stipulation, Arkla's maintenance on its man holes was restricted to certain hours. For a period of five years after the completion of the improvement, Arkla was prohibited from cutting the pavement to install service connections. It was necessary for Arkla to place its new main pipeline outside the pavement because the nature of its business required the tapping of its line for new services, maintenance and the safety of its gas mains. We agree with the chancellor that, in the circumstances, there was, in effect, an ouster rather than a mere relocation and the city is required to pay for the $15,000 costs.

Since we hold that the chancellor was correct in finding there was an ouster and not a mere relocation, we deem it unnecessary to disucss appellant's contentions for reversal that the court erred in finding that the federal agency was the moving force and not the city in the project expense and the court erred in finding that if Arkla paid the relocation costs, it would result in discriminatory rates to its rural customers.

Affirmed.

We agree: HARRIS, C.J., and GEORGE ROSE SMITH and BYRD, JJ.