CRAIGHEAD ELECTRIC COOPERATIVE CORPORATION *v.*
CRAIGHEAD COUNTY, Arkansas

02-812 98 S.W.3d 414

Supreme Court of Arkansas
Opinion delivered February 20, 2003

*Lyons, Emerson & Cone. P.L.C.*, by: *Jim Lyons*, for appellant.

*Duncan & Rainwater, P.A.*, by: *Michael Rainwater*, for appellee.

JIM HANNAH, Justice. Craighead Electric Cooperative Corporation ("the Cooperative") appeals summary judgment entered against it by the Craighead County Circuit Court.

The Cooperative asserts that material questions of fact precluded entry of summary judgment. We agree.

The Cooperative sued Craighead County ("the County") alleging that in widening roads, the County encroached upon easements and rights-of-way owned or possessed by the Cooperative, causing the Cooperative damages in costs in moving power lines and poles and in taking of the easements or rights-of-way. The County brought a motion for summary judgment asserting that only the County had a right-of-way in the land used to widen the roads because the County had sixty-foot rights-of-way since entry of a County Court order in 1907. The trial court found that the 1907 Order of the Craighead County Court conveyed to the County a sixty foot right-of-way in the four roads at issue in this case.

Because we hold that the 1907 Order does not purport to convey a property interest to the County, we need not address the issue of whether the 1907 Order could convey a property interest to the County, or whether the Cooperative would have standing to challenge any taking by the 1907 Order. We consequently hold that the issue of whether the Cooperative holds easements or rights-of-way that were encroached upon by the County has not been addressed by the trial court. Thus, a question of material fact remains undetermined by the trial court. Therefore, the summary judgment of the Craighead County Circuit Court must be reversed.

*Facts*

The Cooperative sued the County alleging that the County had encroached on easements and rights of way owned or possessed by the Cooperative. More specifically, the Cooperative alleged that the County enlarged roadways without notice, and in some instances with notice, moving road ditches and soil so as to leave Cooperative power poles unsupported, leaning, and otherwise in unsafe conditions that required the Cooperative to move poles and power lines at its own expense. The Cooperative sued for $100,171.20 in compensation for property taken and for costs of moving lines and poles caused by the widening of four specific

roadways. The Cooperative further sought declaratory judgment that compensation would be required for future takings by the County and for costs and fees.

The County moved for summary judgment under Ark. R. Civ. P. 56, alleging that the Cooperative had no property rights in the affected easements, nor any equitable right to compensation. The County also argued that the Cooperative decided to move the poles on its own, and that there was no taking.

The trial court granted summary judgment, finding that a 1907 Craighead County Court order conveyed a sixty-foot easement to the County on all the affected roads; therefore, the Cooperative held no interest in the land on which the poles stood. The trial court further found that pursuant to the common-law rule, the Cooperative had to bear its own costs of relocation. The trial court additionally found that if there was an issue of an unconstitutional taking under the 1907 order, the Cooperative lacked standing to raise it; instead the affected landowners had to raise the issue. The Cooperative appeals the summary judgment.

### Standard of Review

Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878 (2002); *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998); *Pugh, supra*.

■ ■ Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Cole, supra; Wallace v. Broyles,* 331 Ark. 58, 961 S.W.2d 712 (1998); *Angle v. Alexander,* 328 Ark. 714, 945 S.W.2d 933 (1997). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *Cole, supra; George, supra.*

### Easements and Rights-of-Way

■ ■ We note first that the parties use the terms right-of-way and easement interchangeably. A right-of-way is an easement and "right-of-way" is usually the term used to describe the easement itself or the strip of land which is occupied for the easement. *Loyd v. Southwest Ark. Util. Corp.,* 264 Ark. 818, 825, 580 S.W.2d 935 (1979). Also, as the County asserts in citing *Arkansas State Highway Commission v. Cordes Motors, Inc.,* 315 Ark. 285, 867 S.W.2d 178 (1993), a right-of-way or easement in a road may be acquired by prescription. The Cooperative asserts that it holds a right-of-way in the land used by the County to widen the subject roads. The County argues that by way of the 1907 Order, it has a right-of-way in the land used to widen the roads.

■ The parties agree that the landowners adjoining the roads hold the fee in the land, and that any right to use the land consumed in widening the roads comes by way of an easement or right-of-way. A right-of-way or easement is entitled to all the constitutional protections afforded other property rights. *Southwestern Bell Tel. Co. v. Davis,* 247 Ark. 381, 385, 445 S.W.2d 505 (1969).

■ We will first dispense with the argument that the 1907 Order conveyed a right-of-way to the County. The August 17, 1907, Order of the Craighead County Court states:

> On this day it is ordered by the Court that all Public Roads established in Craighead County, where the order establishing same fails to state the width, shall be construed to read sixty feet.

The trial court found that this order was effective to confer on the County a right-of-way of sixty feet in the roads in question. By its terms the 1907 Order does not attempt to confer an interest in property. The 1907 Order attempts to modify county court orders establishing roads that are silent regarding the width of the road to be established. It goes no further. Therefore, no property right was conveyed by the 1907 Order alone.

The County alleges that even without the 1907 Order, the Cooperative failed to prove below that it held an interest in the land where its poles and power lines were located, that it has no franchise or deed proving ownership, that it has agreements showing entry on to the land was permissive, that it could acquire no easement against the County by adverse possession, and that the common-law rule is utilities pay their own costs of relocation.

The trial court's order on summary judgment does state that to prevail in the event the 1907 Order was ineffective, the Cooperative had to show that it held an easement by prescription, that the County encroached on that easement, and that the Cooperative suffered damages. However, the trial court found the 1907 Order to be effective and consequently made no determination of what other rights might exist in the easement, whether those rights are held by the County or by the Cooperative. It is also true that the trial court additionally found that applying the common-law rule that utilities pay their own relocation costs meant the Cooperative was responsible for the costs of relocation. The Cooperative challenges this finding, and we agree that application of the common-law rule in Arkansas is limited and not applicable in this case.

Whether the County, the Cooperative, or both possess a right-of-way in the land adjoining the roadway has not been determined below. We note that if the County had a prescriptive right-of-way in the roads as they existed before widening, that right-of-way does not vest in the County the right at a later date to widen or enlarge the prescriptive right except by just compensation to or the permission of the adjoining easement owner or landowner. *Davis, supra.*

The trial court must determine what rights, if any, both the County and the Cooperative may possess in the land used to widen the subject roads. The Cooperative alleged by way of the Affidavit of Cooperative manager Wayne Honeycutt that the Cooperative has never sought permission to enter the land where its poles and lines are located, and that the Cooperative maintained the poles and lines, and cut tree limbs, trees, and brush in the area where the poles are located. According to Mr. Honeycutt, the use of the land has always been under a claim of right. There is a material question of fact regarding whether the Cooperative has a prescriptive right in the land used to widen the subject roads. Likewise, the County alleges a similar right in the same land.

The evidence shows that the poles and power lines were placed along the subject roads at the latest between 1947 and 1951. There is no evidence that the Cooperative obtained and recorded written easements or that it obtained permission. Some records were provided showing power customers in the last few years have agreed to grant and convey an easement, but no ease-ments were recorded based on these agreements, which likely long post-date any interest by prescription acquired by the Cooperative anyway. The trial court stated in a footnote to its order that the later agreements granting the right to obtain an easement would show entry was now by permission. The agreement was to "grant and convey an easement" or right-of-way, and therefore was an agreement to convey an interest in the property. Such a property interest would be due constitutional protection by the courts. *Davis, supra.* The agreements do not grant permission to enter onto the property. The language in the agreements cuts against the County and tends to show the entry on the land was not permissive.

 The facts in this case are simply that the subject four roads were built at an undetermined earlier date and constructed at that time of undetermined dimensions. The County asserts that it has a prescriptive right in the land used in widening the roads, and that the Cooperative may not acquire an interest in the prop-erty by adverse possession because adverse possession is not effec-tive against the County as a part of the State. The parties agree that the Cooperative could not obtain a property interest in the

County's property by adverse possession. This is a correct statement of the law. *Arkansas Game and Fish Comm'n v. Lindsey*, 292 Ark. 314, 730 S.W.2d 474 (1987). However, the Cooperative does not assert that it has acquired a right-of-way against the County by adverse possession or prescription, but rather that it has acquired that right against the fee holder. This court in *Cathey v. Arkansas Power & Light Co.*, 193 Ark. 92, 95, 97 S.W.2d 624 (1936), stated:

> The highway department had a right to condemn or take a right-of-way over appellant's land. It, however, could not do this without paying him just compensation therefor, and it would have no right to appropriate or take the right-of-way over one's land for any purpose other than for a highway for the use of the public, and every additional servitude to which the land is subjected entitles the owner to compensation for such additional servitude.

*Cathey*, 193 Ark. at 95. This court in *Cathey, supra* further stated:

> The condemnation of land for a highway does not deprive the landowner of the fee in the land, but the right-of-way gives the public the right to use it as a highway. The appellee, having erected its poles and wires on appellant's land, was a trespasser and liable for nominal damages whether there were any actual damages or not.

*Cathey*, 193 Ark. at 94. This encroachment by the power company constitutes a new servitude. *Cathey, supra; Southwestern Bell Tel. Co. v. Biddle*, 186 Ark. 294, 298, 54 S.W.2d 57 (1932). *See also, Padgett v. Arkansas Power & Light Co.*, 226 Ark. 409, 413, 290 S.W.2d 426 (1956). The parties agree that the roads, and the poles and power lines, constitute an encumbrance on the property of the adjoining landowners. The trial court must determine who had what rights in the land used in widening the roads. If the Cooperative has property rights in the easements adjoining the subject roads, it may not be ousted from its occupancy of that portion of the street or easement or forced to move or relocate without just compensation for its costs. *City of Little Rock v. Ark. La. Gas Co.*, 261 Ark. 347, 548 S.W.2d 133 (1977). It may turn out that the Cooperative has no such right, but to date, neither the rights of the Cooperative nor the rights of the County have been determined by the trial court.

## Common Law and Franchises

 The trial court found that the common law requires a utility to bear its own relocation costs where the county widens its roads. The County asserts that under the common-law rule, outside of four exceptions, a utility must bear its own costs of relocation. The County attempts to expand the common-law rule beyond its bounds in Arkansas. The general common-law rule is that a utility must bear its own relocation costs when relocation of equipment is required by public necessity. *Southwestern Bell Tel. Co. v. City of Fayetteville.*, 271 Ark. 630, 634, 609 S.W.2d 914 (1980). It should be noted that in the *City of Fayetteville,* this court noted that our decisions were departing from the very common-law rule cited by the County. *City of Fayetteville,* 271 Ark. at 635. It also must be noted that in neither of the cases cited by the County was the utility forced to pay the costs of its relocation. Further, the County's argument about the common-law rule ignores the Cooperative's argument it has a property right in a right-of way that would be violated.

 The existence of a public necessity allows the state to exercise its police power. *Phillips v. Town of Oak Grove,* 333 Ark. 183, 189, 968 S.W.2d 600 (1998). The police power is an attribute of sovereignty and a necessary attribute of every civilized government. It is a general term used to express the particular right of a government which is inherent in every sovereignty. *Geirin v. City of Little Rock,* 203 Ark. 103, 108, 155 S.W.2d 719 (1941), citing 11 Am. Jur. 245. *See also Arkansas County v. Burris,* 308 Ark. 490, 496, 825 S.W.2d 590 (1992). However, this court has stated that the police power should not be indiscriminately or unnecessarily used, that the police power of the State is one founded in public necessity, and this necessity must exist in order to justify its exercise. *Ark. State Hwy. Comm'n v. Ark. Power & Light Co.,* 231 Ark. 307, 311, 330 S.W.2d 77 (1959). *See also Hand v. H & R Block, Inc.,* 258 Ark. 774, 528 S.W.2d 916 (1975); *Beaty v. Humphrey,* 195 Ark. 1008, 1013-1014, 115 S.W.2d 559 (1938). In *Arkansas State Highway Commission,* a case involving a utility, this court determined that there was no need to use the police power because the authority under which the Highway Commission intended to undertake construction provided that the prop-

erty and property rights may be acquired by gift, devise, purchase, or condemnation. Ark. Code Ann. § 27-68-108 (Repl. 1994). The road construction at issue was undertaken under this same statute.

The County alleges that case law supports the conclusion that under these facts, the Cooperative must bear its own costs to move the poles and power lines, citing language in *Ark. State Hwy. Comm. supra.*, "But even though the Power Company has the right to maintain its poles on the rights of way, it does not mean that the company could not be compelled to move its facilities so as to not unnecessarily interfere with the use of the streets." *Ark. State Hwy Comm'n*, 231 Ark. at 309. The *Arkansas State Highway Commission* case and the quoted language is cited in the dissent in *Southwestern Bell Tel. Co. v. City of Fayetteville*, 271 Ark. 630, 636, 609 S.W.2d 914 (1980). However, in *Ark. State Hwy. Comm'n*, the court was discussing a written franchise granted to the power company by the City of El Dorado, which provided, "provided the streets, alleys, avenues, and sidewalks shall not be unnecessarily and unreasonably impaired or obstructed." *Ark. State Hwy. Comm.*, 231 Ark. at 310. *Arkansas Power & Light Co., supra*, also involved a franchise. A review of the briefs, abstracts, and addendums reveals no franchise in the present case. Indeed, the County argues in its brief at page thirteen that the Cooperative has failed to produce a franchise or contract. Whatever rights the Cooperative has neither arise from nor are controlled by a written franchise or contract.

The trial court must determine whether the Cooperative acquired a prescriptive right in the property where the poles and power lines were located. That right is against the landowner as a new servitude on the land. As discussed above, the landowner still holds the fee. The cases distinguish the erection of utilities as distinct and not subservient to any right-of-way or easement the County may have for construction of a road. The County, however, notes that under Ark. Code Ann. § 18-15-803 (Supp. 2001), the Cooperative may construct its poles and power lines along a public highway. The County goes on to note that Ark. Code Ann. § 18-15-503 does not require that the Cooperative pay for a right-of-way and also does not require that the Cooperative be

compensated when it must relocate its poles. This statute sets out the right to acquire a right-of-way. *Loyd, supra.* However, a right-of-way is not granted by the statute. The Cooperative is claiming the right-of-way by adverse possession as against the landowners.

■ If the Cooperative has a property interest in the land where the poles and power lines were standing before the subject four roads were widened, then forcing the movement of the poles and power lines may constitute a taking that requires compensation. The common-law rule is not that a utility is required to bear the costs of its own relocation where the county widens a road, but rather the common-law rule is that a utility must bear the costs of its own relocation when relocation of that equipment is required by a public necessity. *Southwester Bell Tel. Co., supra.*

Reversed and remanded.